UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PATRICIA L. PATTERSON, individually
and on behalf of all others similarly
situated; ROBERT PATTERSON,
individually and on behalf of all
others similarly situated,
<u>Plaintiffs-Appellants,</u>

v.                                                                                      No. 98-2774

FORD MOTOR CREDIT COMPANY;
DUTCH MILLER CHEVROLET,
INCORPORATED, and all other motor
vehicle dealerships similarly
situated,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert J. Staker, Senior District Judge.
(CA-98-6, CA-98-86-3)

Argued: October 27, 1999

Decided: February 2, 2000

Before MURNAGHAN, NIEMEYER, and TRAXLER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James William St Clair, ST CLAIR & LEVINE, Hunting-
ton, West Virginia, for Appellants. Thomas M. Byrne, SUTHER-

LAND, ASBILL & BRENNAN, L.L.P., Atlanta, Georgia, for Appellees. **ON BRIEF:** William D. Levine, ST CLAIR & LEVINE, Huntington, West Virginia, for Appellants. Kristen Jones Indermark, SUTHERLAND, ASBILL & BRENNAN, L.L.P., Atlanta, Georgia; Robert H. Sweeney, Jr., Scott D. Maddox, JENKINS FENSTER-MAKER, P.L.L.C., Huntington, West Virginia; Michael T. Chaney, KAY, CASTO, CHANEY, LOVE & WISE, Charleston, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Patricia and Robert Patterson appeal from the district court's order dismissing, pursuant to Rule 12(b)(6), their claims against Dutch Miller Chevrolet, Incorporated ("Dutch Miller") and Ford Motor Credit Company ("FMCC") under section 2(c) of the Robinson-Patman Act, see 15 U.S.C.A. § 13(c) (West 1997), in which they contend that Dutch Miller and FMCC violated anti-trust laws when Dutch Miller received compensation for assigning the Pattersons' installment contract to FMCC. We affirm.

I.

The Pattersons decided to purchase a sport utility vehicle from Dutch Miller, provided that they could obtain affordable financing. The Pattersons allege that in order to induce them to close the deal, Dutch Miller promised to use its best efforts to secure favorable financing for the Pattersons. According to the Pattersons, Dutch Miller's financial personnel represented that 14.75 percent was the best interest rate available, and the Pattersons, relying upon this information, entered into an installment agreement to purchase the vehicle from Dutch Miller at an interest rate of 14.75 percent. The terms of

2

the agreement required the Pattersons to make monthly installment payments of the purchase price along with interest. The total cost of financing the vehicle at this rate was $9,110.61, assuming the Pattersons made each installment payment as scheduled. It is undisputed that FMCC was not a party to this agreement.

Dutch Miller then assigned the installment sales contract to FMCC, which agreed to purchase the contract from Dutch Miller at an interest rate lower than the 14.75 percent rate provided by the terms of the contract.[1] In return for placing the financing with FMCC, Dutch Miller was paid the difference (known generally as a"discount" or the "dealer's participation") between the finance charge at the higher interest rate set forth in the installment contract and the finance charge at the lower interest rate that FMCC was willing to extend. According to the Pattersons, Dutch Miller knew -- before the installment contract was executed -- that FMCC was willing to buy the paper from Dutch Miller at a rate lower than 14.5 percent. Moreover, the Pattersons allege that the defendants had arranged for the assignment of the contract before the Pattersons executed it.

A couple of additional facts bear mentioning. The Pattersons do not allege that they sought financing through an outside source or that they attempted to compare the interest rate quoted by Dutch Miller with rates offered by other lenders in the retail market. Likewise, there are no allegations that FMCC would have been willing to extend to the Pattersons a more favorable rate than 14.75 percent had the Pattersons sought financing directly from FMCC in the retail market.

The Pattersons brought this action in state court, alleging that Dutch Miller and FMCC violated the Robinson-Patman Act when FMCC paid Dutch Miller a "discount" in connection with the assignment of the Pattersons' installment sales contract. Even though the Pattersons do not suggest that the underlying sale of the vehicle was not at arm's length, Dutch Miller, according to the complaint, began serving as the Pattersons' agent responsible for obtaining favorable financing. The Pattersons claim that the discount payment amounted

_____

[1] The Pattersons contend that FMCC agreed to purchase the installment sales contract from Dutch Miller at a rate of 10.75 percent. See Brief of Appellants at 4.

3

to a commercial bribe from FMCC to the agent for the Pattersons, Dutch Miller, in violation of section 2(c) of the Robinson-Patman Act.

The complaint also alleged that Dutch Miller ran afoul of the West Virginia Consumer Credit Protection Act by negotiating a retail interest rate that was higher than FMCC was offering to dealers like Dutch Miller. And, the Pattersons asserted that Dutch Miller and FMCC had engaged in a civil conspiracy to defraud them and violate state and federal law, including the Robinson-Patman Act. [2]

The defendants removed the action to district court and moved to dismiss the complaint. The district court dismissed the Robinson-Patman claim and the claim that alleged conspiracy to violate the Robinson-Patman Act, reasoning that the Act applies only to transactions involving tangible goods and that the payment from FMCC to Dutch Miller did not involve goods. With respect to the Pattersons' remaining claims, which arose under West Virginia law, the district court declined to exercise supplemental jurisdiction because it believed the claims raised novel issues of state law. See 28 U.S.C.A. § 1367(c)(1) (West 1993). The remaining claims were thus remanded to state court.

II.

A.

The Robinson-Patman Act was aimed at curbing certain practices maintained by large buyers or sellers of goods to evade antitrust restrictions on price discrimination. "One method employed to circumvent the Clayton Act was through the use of `dummy brokerages'" whereby, for instance, "a large buyer with economic clout might insist that in order to do business sellers must pay a fee to a designated `broker' . . . [who] would then turn the money over to the large buyer." Stephen Jay Photography, Ltd. v. Olan Mills, Inc., 903 F.2d 988, 992 (4th Cir. 1990). Section 2(c) of the Robinson-Patman Act was directed primarily toward this practice:

_____

[2] The complaint also purported to be a class action. The Pattersons, however, did not obtain class certification.

4

It shall be unlawful for any person engaged in commerce . . . to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

15 U.S.C.A. § 13(c). The language of this provision is broad, however, and may well apply to other techniques used to effect price discrimination. The Supreme Court has noted that section 2(c) might proscribe commercial bribery, see FTC v. Henry Broch & Co., 363 U.S. 166, 169-70 n.6 (1960), and some circuit courts of appeal have so held, see Stephen Jay Photography, 903 F.2d at 992 n.6 (collecting cases). Whether commercial bribery comes within the scope of this section remains an open question in this circuit. See id. at 991-93. We need not resolve this question, however, since the Pattersons' claim fails even if commercial bribery were prohibited by section 2(c) of the Robinson-Patman Act.

The district court concluded that the payment of the dealer's participation -- the alleged bribe -- did not fall within the purview of section 2(c) because it did not involve the sale of tangible goods. And, indeed, the circuit courts of appeal appear to be in agreement that section 2(c) covers only transactions that involve the transfer of tangible goods. See, e.g., Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1274 (9th Cir. 1991); Union City Barge Line, Inc. v. Union Carbide Corp., 823 F.2d 129, 140-41 (5th Cir. 1987); Freeman v. Chicago Title & Trust Co., 505 F.2d 527, 529-31 (7th Cir. 1974) (per curiam).

The Pattersons do not quarrel with this general proposition. Rather, they urge us to conclude that since FMCC's purchase of the installment sales contract made the underlying sale possible, the "dominant nature" of the transaction was the transfer of a tangible good, i.e., the automobile. We cannot agree. It is undisputed that FMCC was not a

5

party to the sales contract. It is undisputed that FMCC was not a buyer or seller of goods. It is undisputed that the Pattersons played no role in Dutch Miller's assignment of the installment contract to FMCC. And, the Pattersons do not allege that the installment sales contract was contingent upon the acceptance of the installment contract by FMCC or financing by FMCC.

These facts compel the conclusion that the purchase of the installment sales contract by FMCC was part of a separate transaction from the underlying automobile sale. We think it is clear, therefore, that the assignment of the contract was a matter wholly between Dutch Miller and FMCC. Of course, the purchase of an installment sales contract is not a transaction involving tangible goods. See Freeman, 505 F.2d at 530-31 (rejecting the argument that the transfer of a tangible physical document is a transaction involving goods). Because an installment sales contract is "a writing . . . which evidence[s] both a monetary obligation and a security interest in . . . specific goods," W. Va. Code Ann. § 46-9-105(1)(b) (Michie Supp. 1999), it qualifies as chattel paper, which is not a tangible good, see W. Va. Code Ann. § 46-9-105(1)(h) (Michie Supp. 1999). The essence of chattel paper is the obligation that it represents, which is clearly intangible. Therefore, the alleged "bribe" between FMCC and Dutch Miller is not one which involves goods.

The fact that the alleged bribe is unconnected to the sale of goods is underscored by the Pattersons' own allegations that Dutch Miller somehow served as their agent. Even if we assume the truth of the Pattersons' conclusory claim that Dutch Miller was their agent, they only allege that Dutch Miller was their agent for purposes of obtaining financing, nothing more. Indeed, the Pattersons concede that the extension of credit to finance a purchase of goods is not equivalent to the sale of goods. See Brief of Appellants at 12.

Because the alleged bribe -- the amount paid by FMCC to Dutch Miller -- was connected only to the purchase and transfer of the installment sales contract, it was not a transaction in tangible goods within the reach of section 2(c) of the Robinson-Patman Act. Accordingly, we affirm the district court's decision on the grounds that the alleged bribe was not paid in connection with a transaction involving tangible goods.

6

B.

In an attempt to circumvent the district court's ruling that the alleged purchase of the contract by FMCC was not a transaction involving goods, the Pattersons argue that we should look past the technicalities of the arrangement and view the execution of the installment sales contract and its subsequent assignment to FMCC as one transaction, not two. They allege that these two transactions occurred simultaneously, that FMCC's "purchase" of the contract made the sale of the contract possible, and that therefore the"dominant nature" of the single transaction was the transfer of tangible goods.

Assuming this is true, we are presented with another basis, perhaps even more compelling than the first, on which to affirm the district court's decision. In order for a commercial bribery claim to be cognizable under section 2(c) of the Robinson-Patman Act, the alleged bribe must traverse the "seller-buyer" line. See Stephen Jay Photography, 903 F.2d at 992. As we have previously explained:

> In the appellate decisions which have found commercial bribery within the ambit of section 2(c) the common thread has been the passing of illegal payments from seller to buyer or vice versa. . . . [B]y restricting liability to situations when the seller-buyer line has been passed, courts have narrowed the scope of section 2(c) and upheld Congress' intent to leave the relationships of legitimate brokerages unaffected by section 2(c).

Id. (internal citations and quotation marks omitted). Thus, the Pattersons' claim must include a contention that the payment from FMCC to Dutch Miller crossed the seller-buyer line.

The complaint characterizes Dutch Miller as the Pattersons' agent during what they say was really a single transaction. Common sense dictates that it is not possible for Dutch Miller to be on different sides of the same transaction. Obviously, the Pattersons do not and cannot allege that Dutch Miller was acting as the Patterson's agent during the actual purchase of the vehicle because Dutch Miller was the seller. They had a directly adversarial relationship to each other since, as would any seller, Dutch Miller hoped to extract the highest price pos-

7

sible from the Pattersons, and the Pattersons wished to pay as little as possible. Under such circumstances, the payment by FMCC to Dutch Miller could not possibly be construed to cross the seller-buyer line with respect to the purchase of the vehicle.

III.

Because we conclude that the Pattersons failed to state a claim under the Robinson-Patman Act, their claim that Dutch Miller and FMCC conspired to violate the Robinson-Patman Act fails as well. Accordingly, we affirm the dismissal of the Pattersons' federal claims, and we hold that the district court did not abuse its discretion by refusing to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C.A. § 1367(c)(3); Jordahl v. Democratic Party of Va., 122 F.3d 192, 203 (4th Cir. 1997). The decision of the district court is affirmed.

AFFIRMED

8